# **EXHIBIT A**

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

KEB HANA BANK USA, N.A. f/k/a BNB HANA BANK, N.A.,

        Plaintiff,

-against-

JOHN WAYNE CAMPBELL,

        Defendant.

**SUMMONS**

Index No. _____

Date Purchased: _____

Plaintiff designates New York County as the place of trial. Venue is based upon the county in which a substantial part of the events or omissions giving rise to the claim occurred.

TO THE ABOVE-NAMED DEFENDANT:

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answers on the plaintiff's undersigned attorneys not later than 20 days after the date of service of this summons exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York). In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
       January 26, 2021

                      JAFFE & ASHER LLP
                      *Attorneys for Plaintiff*
                      600 Third Avenue
                      New York, New York 10016
                      (212) 687-3000

                      By: s/ Rocco Luisi
                          Rocco Luisi, Esq.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

KEB HANA BANK USA, N.A. f/k/a BNB HANA BANK, N.A.,

                  Plaintiff,

-against-

JOHN WAYNE CAMPBELL,

                  Defendant.

Index No. _____

**COMPLAINT**

Plaintiff KEB HANA BANK USA, N.A. f/k/a BNB HANA BANK, N.A. (the "Bank"), by its attorneys, Jaffe & Asher LLP, as and for its Complaint against defendant JOHN WAYNE CAMPBELL ("Campbell"), alleges as follows:

### NATURE OF THE ACTION

1. In this action, the Bank seeks to recover from Campbell personal expenses he improperly charged on his Bank-issued credit card while he was Chairman, CEO and President of the Bank and caused the Bank to pay. Although Campbell knew he was not supposed to use the Bank's credit card for personal expenses under the terms of his employment contract and the Bank's employee handbook, he used the credit card for personal expenses, and then submitted expense reports that improperly included these personal expenses. He did so knowing that the Bank would pay the credit card bill containing these personal expenses based upon the improper inclusion by Campbell of these expenses on the expense report. Campbell knew that, as CEO and President of the Bank, there would be no further review or independent approval of his expense reports so that his practice to have his personal expenses paid would go unnoticed. The Bank asserts causes of action for breach of contract, breach of fiduciary duty, breach of the duty of loyalty, fraud, conversion and unjust enrichment. The Bank seeks damages of at least

$182,365.04, punitive damages and pre-judgment interest from July 15, 2018.

## THE PARTIES

2. The Bank is a national bank with, at all relevant times, an office located at 309 Fifth Avenue, New York, NY 10016.

3. Upon information and belief, Campbell is a resident of the State of Florida residing at 2745 Tiburon Blvd East #302, Naples, FL 34109.

## FACTUAL ALLEGATIONS

**A.    Campbell's Relationships With the Bank**

4. Campbell began his relationship with the Bank as an independent consultant to the Bank engaged through the Bank's outside counsel, Pepper Hamilton LLP, in or about March 2015, to provide expert advice on banking practices, regulatory requirements and the operations of national banks.

5. In August 2015, the outside counsel relationship transitioned from Pepper Hamilton LLP to the Dinsmore & Shohl LLP.

6. Under the terms of the consultant engagement for both law firms, Campbell received an hourly fee and reimbursement of expenses (including Campbell's travel expenses between his residence in Florida and the Bank's New York City office) which were invoiced by and paid through the law firms.

7. In September 2015, Campbell became a member of the Bank's Board of Directors.

8. The Bank agreed to continue to reimburse Campbell's travel expenses between his residence in Florida and the Bank's New York City office for Board of Director meetings.

9. In or about January 2016, former Board Chairman of the Bank, Hyun Joo Lee,

discussed with Campbell the possibility of Campbell taking on the roles of Board Chairman, interim CEO and President of the Bank – which roles required full-time service in New York City.

10. Campbell agreed to take on the roles of Board Chairman, interim CEO and President of the Bank.

**B.      The February 24, 2016 Board Meeting**

11. On February 24, 2016, the Bank's Board of Directors met to appoint Campbell as Chairman, interim CEO and President and determine Campbell's compensation for those roles.

12. In determining Campbell's compensation, the Board took into account that he would have to move to the New York City area.

13. Because the Bank required Campbell to move to the New York City area, it determined not to continue to reimburse Campbell for his travel expenses between his residence in Florida and the Bank's New York City office.

14. The Board determined that Campbell's monthly compensation would be the only form of compensation he would receive for his service as Chairman, interim CEO and President.

15. At that meeting, the Board offered Campbell a fixed amount of monthly compensation for his service as Chairman, interim CEO and President and advised him that this amount represented his entire monthly compensation for his new roles.

16. At that meeting, Campbell accepted the compensation as proposed by the Board.

**C.      The Employment Contract**

17. On March 21, 2016, the Bank and Campbell executed a contract ("Employment Contract") that formally engaged Campbell as Chairman, interim CEO and President.

18. The Employment Contract provides that Campbell's office location was the Bank's Manhattan office address in New York City.

19. Under the heading "Compensation" Campbell was given a monthly salary, a company car, and "expenses."

20. With regard to expenses, the Employment Contract states:

- *For Purposes of conducting Bank business, you [Campbell] will be provided an American Express Corporate Card.*

- *Expenses outside the scope of business promotions should be submitted for payment through the expense report process.*

No other detail regarding expenses is included in the Employment Contract.

21. The Employment Contract also provides for certain itemized benefits to be provided to Campbell: 401(k) plan eligibility, health insurance, life insurance, sick pay, vacation pay and personal days.

22. The Employment Contract does not provide for reimbursement for travel expenses, including between New York and Florida, Connecticut and Florida or Connecticut and New York.

23. Campbell obtained and used a company-owned car as part of his compensation package.

**D.  The Employee Handbook**

24. At all relevant times, the Bank's Employee Policy Handbook ("Employee Handbook"), provided, in part, that:

- Employees shall spend expenses only for the execution of the Bank's business at a reasonable and necessary level. The misappropriation of the Bank's money is strictly forbidden.

- Transportation Expense Reimbursement – allows you to make pre-tax payroll deductions to reimburse you for some actual commuting cost.

5

- The Bank will reimburse you for reasonable business travel expenses incurred while on assignments away from the normal work location. All business travel must be approved in advance by your manager/supervisor and senior management.

- When approved, the actual costs of travel, meals, lodging, and other expenses directly related to accomplishing business travel objectives will be reimbursed. Employees are expected to limit expenses to reasonable amounts.

- When travel is completed, you should submit completed travel expense reports within seven days.

- For domestic travel of less than 12 hours, only travel expenses are reimbursable.

- For domestic travel of 12 hours or more, the following are reimbursable: Transportation Expenses, Lodging and Daily Allowance for meals and incidental expenses (First VP or higher: $80/day).

- Lodging is reimbursable at the federal per diem rates issued by the General Services Administration.

25. Campbell signed the Employee Handbook Acknowledgement at the outset of his employment with the Bank, on or about March 10, 2016.

E.  **Campbell Improperly Submits Personal Expenses for Payment by the Bank**

26. Campbell's status as interim CEO and President converted to permanent CEO and President on July 22, 2016 when efforts to hire a permanent replacement were unsuccessful.

27. During his tenure as CEO and President of the Bank, Campbell submitted expense reports for expenses incurred on his Bank-issued Corporate American Express Card to the Bank for payment.

28. Campbell charged the substantial majority, if not all, of these expenses on his corporate American Express card issued to him by the Bank.

29. Campbell submitted his credit card expenses for payment to the Bank's staff that was under his direct or indirect supervision.

30. The Bank fully paid the credit card issuer for all personal expenses he submitted on his expense reports believing that Campbell would not submit inappropriate or personal expenses for payment.

31. As Chairman, CEO and President, Campbell failed to institute and implement sufficient controls to ensure that his expenses were independently reviewed.

32. Campbell failed to institute and implement sufficient controls over his expense approval process because he knew that his expenses would be paid without substantive review due to his position of authority over the Bank's staff that was responsible for processing expense reports.

33. Campbell's tenure as Chairman, CEO and President ended after almost three years, on or about February 5, 2019.

**F.  The BDO Report**

34. Following the termination of Campbell's employment with the Bank, and a subsequent internal review of the Bank's expenses by management, the Bank engaged BDO USA LLP ("BDO") to conduct an audit of the expenses incurred by Campbell during his tenure as CEO and President.

35. BDO flagged four categories of improper personal expenses submitted by Campbell and paid by the Bank, totaling $130,913.43.

36. The categories and amounts are as follows:

- Travel between the New York metro area and Florida ("Interstate Commuting Expenses") consisting primarily of airline ticket costs and related expenses such as seat upgrades and car service fees relating to travel between New York and Florida: $76,377.09.

- Travel between Connecticut and New York ("Local Commuting Expenses") consisting of train tickets and taxis: $8,224.15

- Local hotel expenses ("Local Hotel Expenses") consisting of hotel expenses when Mr. Campbell stayed overnight in Manhattan, and did not go to his Connecticut address or home to Florida: $25,438.71

- Personal Expenses ("Personal Expenses") consisting of expenses for meals, golf, hotels and related travel which BDO found were personal in nature, exceeded guidelines of the Employee Policy Handbook or were not known to relate to legitimate business purposes: $20,873.48.

37. In addition, BDO identified $1,451.61 relating to travel expenses of Campbell's wife that BDO was unable to confirm was reimbursed by Campbell to the Bank ("Wife's Expenses")

38. Collectively, the Interstate Commuting Expenses, Local Commuting Expenses, Local Hotel Expenses, Personal Expenses and Wife's Expenses are hereinafter referred to as the "Disputed Expenses," which total $132,365.04.

39. Campbell charged on his Bank-issued credit card and included on his expense reports Interstate Commuting Expenses and Local Commuting Expenses when he was not entitled to charge those personal expenses, and even though the Bank provided him with a company car as part of his compensation package.

40. Campbell charged on his Bank-issued credit card and included on his expense reports Local Commuting Expenses when he was not entitled to charge those personal expenses, and even though the Employee Handbook provided for a payroll deduction process for local commuting expenses.

41. Campbell did not incur the Disputed Expenses while on assignments away from his normal work location in New York City.

42. The Disputed Expenses were not directly related to accomplishing business travel or other business objectives.

8

### G. Vacation Pay

43. Furthermore, at the time of Campbell's departure from the Bank, the Bank paid Campbell $50,000 for unused vacation days ("Vacation Pay") represented by Campbell to be due to him as unused vacation days. Upon information and belief, Campbell actually used some or all of those vacation days contrary to his representation.

### AS AND FOR A FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT—EMPLOYMENT CONTRACT)

44. The Bank repeats and realleges the prior paragraphs above as if fully set forth herein.

45. The Employment Contract does not provide for payment by the Bank of the Disputed Expenses.

46. Campbell breached the Employment Contract by charging on his Bank-issued credit card and including on his expense reports the Disputed Expenses.

47. Upon information and belief, Campbell breached the Employment Contract because the Bank paid him for his claim of unused vacation days that he actually used.

48. Despite due demand, Campbell has failed and refused to reimburse the Bank for the Disputed Expenses.

49. Upon information and belief, Campbell owes the Bank some or all of the Vacation Pay.

50. The Bank has been damaged in the amount of **$182,365.04**.

51. By reason of the foregoing, the Bank is entitled to a money judgment against Campbell in the amount of **$182,365.04**, plus pre-judgment interest from July 15, 2018, the reasonable intermediate date of Campbell's approximate 35-month term of employment of March 2016 to February 2019.

## AS AND FOR A SECOND CAUSE OF ACTION
## (BREACH OF CONTRACT – THE EMPLOYEE HANDBOOK)

52. The Bank repeats and realleges the prior paragraphs above as if fully set forth herein.

53. Campbell breached the Employee Handbook because he charged the Disputed Expenses, which were personal expenses, on his Bank-issued credit card that was to be used only for specified business expenses, and included them on his expense reports.

54. Campbell breached the Employee Handbook because he did not incur expenses only for the execution of the Bank's business at a reasonable and necessary level.

55. Campbell breached the Employee Handbook by misappropriating the Bank's money by charging on his Bank-issued credit card and including on his expense reports the Disputed Expenses.

56. Campbell breached the Employee Handbook because travel between Campbell's Florida residence and New York, his Florida residence and Connecticut residence and his Connecticut residence and New York were not reasonable business travel expenses incurred while on assignments away from his normal work location of New York City.

57. Campbell breached the Employee Handbook because the actual costs of travel, meals, lodging, and other expenses that made up the Disputed Expenses were not directly related to accomplishing business objectives.

58. Campbell breached the Employee Handbook because he failed to limit expenses to reasonable amounts.

59. Campbell breached the Employee Handbook because he charged on his Bank-issued credit card and included on his expense reports expenses in addition to travel expenses for domestic travel of less than 12 hours.

60. Upon information and belief, Campbell breached the Employee Handbook by requesting and retaining some or all of the Vacation Pay.

61. Despite due demand, Campbell has failed and refused to reimburse the Bank for the Disputed Expenses.

62. Upon information and belief, Campbell owes the Bank some or all of the Vacation Pay.

63. The Bank has been damaged in the amount of **$182,365.04**.

64. By reason of the foregoing, the Bank is entitled to a money judgment against Campbell in the amount of **$182,365.04**, plus pre-judgment interest from July 15, 2018.

### AS AND FOR A THIRD CAUSE OF ACTION
### (BREACH OF FIDUCIARY DUTY)

65. The Bank repeats and realleges the prior paragraphs above as if fully set forth herein.

66. As Chairman, CEO and President of the Bank, Campbell had a fiduciary duty to the Bank.

67. As Chairman, CEO and President of the Bank, Campbell had management responsibility and control over the Bank.

68. Campbell's fiduciary duty to the Bank is heightened by the considerable distance between Campbell in New York and the Bank's ultimate parent company in South Korea.

69. The Bank placed full trust in Campbell to manage the Bank honestly and skillfully and relied on him to do so.

70. Campbell breached his fiduciary duty by charging on his Bank-issued credit card and including on his expense reports the Disputed Expenses.

11

71. Campbell breached his fiduciary duty by conversion of the Bank's funds.

72. Campbell breached his fiduciary duty by failing to institute and implement sufficient controls to ensure that his expenses were independently reviewed.

73. Upon information and belief, Campbell breached his fiduciary duty by requesting and retaining some or all of the Vacation Pay.

74. As a result of Campbell's breaches of fiduciary duty, the Bank has been damaged in the amount of **$182,365.04**.

75. By reason of the foregoing, The Bank is entitled to judgment against Campbell for **$182,365.04**, plus pre-judgment interest from July 15, 2018.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (BREACH OF DUTY OF LOYALTY)

76. The Bank repeats and realleges the prior paragraphs above as if fully set forth herein.

77. As Chairman, CEO and President of the Bank, Campbell had a duty of loyalty to the Bank.

78. As Chairman, CEO and President of the Bank, Campbell had management responsibility and control over the Bank.

79. Campbell's duty of loyalty to the Bank is heightened by the considerable distance between Campbell in New York and the Bank's ultimate parent company in South Korea.

80. The Bank placed full trust in Campbell to manage the Bank honestly and skillfully and relied on him to do so.

81. Campbell breached his duty of loyalty by charging on his Bank-issued credit card and including on his expense reports the Disputed Expenses.

12

82. Campbell breached his duty of loyalty by conversion of the Bank's funds.

83. Campbell breached his duty of loyalty by failing to institute and implement sufficient controls to ensure that his expenses were independently reviewed.

84. Upon information and belief, Campbell breached his duty of loyalty by requesting and retaining some or all of the Vacation Pay.

85. As a result of Campbell's breaches of his duty of loyalty, the Bank has been damaged in the amount of **$182,365.04**.

86. By reason of the foregoing, The Bank is entitled to judgment against Campbell for **$182,365.04**, plus pre-judgment interest from July 15, 2018.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (FRAUD)

87. The Bank repeats and realleges the prior paragraphs above as if fully set forth herein.

88. By charging on his Bank-issued credit card and including on his expense reports the Disputed Expenses, Campbell made material misrepresentations of fact to the Bank that the Disputed Expenses were legitimate and permitted business expenses incurred while on assignments away from his normal work location and were directly related to accomplishing business travel and/or other business objectives.

89. Upon information and belief, by requesting and retaining some or all of the Vacation Pay, Campbell made material misrepresentations of fact to the Bank that the Vacation Pay represented compensation for unused vacation time.

90. Campbell had knowledge of the falsity of his misrepresentations.

13

91. Campbell intended to induce the Bank to rely on his misrepresentations, as he knew that the employees to whom he submitted his expense reports were under his direct or indirect supervision and would not conduct an independent review.

92. Upon information and belief, Campbell intended to induce the Bank to rely on his misrepresentations, as he knew that the employee to whom he submitted his request for Vacation Pay was under his direct or indirect supervision and would pay him the amounts requested without independent inquiry.

93. The Bank justifiably relied on Campbell's misrepresentations because he was the Bank's Chairman, CEO and President.

94. As a result of Campbell's fraud, the Bank has been damaged in the amount of **$182,365.04**.

95. By reason of the foregoing, the Bank is entitled to judgment against Campbell for **$182,365.04**, plus pre-judgment interest from July 15, 2018.

### As And For A Sixth Cause Of Action
### (Conversion)

96. The Bank repeats and realleges the prior paragraphs above as if fully set forth herein.

97. Campbell wrongfully exercised dominion or control over the property of the Bank by charging on his Bank-issued credit card and including on his expense reports the Disputed Expenses.

98. Upon information and belief, Campbell wrongfully exercised dominion or control over the property of the Bank by seeking, obtaining and retaining some or all of the Vacation Pay.

99. Campbell took the Bank's funds, and/or received the benefit of the Bank's funds without proper authorization.

100. Campbell took the Bank's funds and/or received the benefit of the Bank's funds to the exclusion of the Bank's rights to them.

101. As a result of Campbell's wrongful actions in taking the Bank's funds, the Bank has been damaged in the amount of **$182,365.04**.

102. By reason of the foregoing, The Bank is entitled to judgment against Campbell for **$182,365.04**, plus pre-judgment interest from July 15, 2018.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### (UNJUST ENRICHMENT)

103. The Bank repeats and realleges the prior paragraphs above as if fully set forth herein.

104. Campbell has been unjustly enriched at the Bank's expense by virtue of charging on his Bank-issued credit card and including on his expense reports for payment by the Bank the Disputed Expenses and which Campbell has refused to reimburse the Bank.

105. Upon information and belief, Campbell has been unjustly enriched at the Bank's expense by virtue of the payment to him of some or all of the Vacation Pay.

106. Campbell has no justification for refusing to reimburse the Bank for the Disputed Expenses.

107. Upon information and belief, Campbell has no justification for refusing to return some or all of the Vacation Pay.

108. The Bank has been injured by Campbell's unjust enrichment in the amount of no less than **$182,365.04**.

109.  By reason of the foregoing, the Bank is entitled to judgment against Campbell for **$182,365.04**, plus pre-judgment interest from July 15, 2018.

**WHEREFORE**, Plaintiff KEB HANA BANK USA, N.A. f/k/a BNB HANA BANK, N.A. respectfully demands judgment against defendant JOHN WAYNE CAMPBELL as follows:

(a) on the first cause of action, awarding the Bank a money judgment against Campbell in the amount of **$182,365.04**, plus pre-judgment interest from July 15, 2018;

(b) on the second cause of action, awarding the Bank a money judgment against Campbell in the amount of **$182,365.04**plus pre-judgment interest from July 15, 2018;

(c) on the third cause of action, **$182,365.04** awarding the Bank a money judgment against Campbell in the amount of **$182,365.04**, punitive damages, plus pre-judgment interest from July 15, 2018;

(d) on the fourth cause of action, awarding the Bank a money judgment against Campbell in the amount of **$182,365.04**, punitive damages, plus pre-judgment interest from July 15, 2018;

(e) on the fifth cause of action, awarding the Bank a money judgment against Campbell in the amount of **$182,365.04**, punitive damages, plus pre-judgment interest from July 15, 2018;

(f) on the sixth cause of action, awarding the Bank a money judgment against Campbell in the amount of **$182,365.04**, punitive damages, plus pre-judgment interest from July 15, 2018;

(g) on the seventh cause of action, awarding the Bank a money judgment against Campbell in an amount to be determined at trial, but no less than **$182,365.04**, plus pre-judgment interest from July 15, 2018;

(h) awarding the Bank reasonable attorneys' fees, interest and costs; and

(i) granting the Bank such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 26, 2021

          JAFFE & ASHER LLP
          *Attorneys for Plaintiff*
          600 Third Avenue
          New York, New York 10016
          (212) 687-3000

          By: s/ Rocco Luisi
            Rocco Luisi, Esq.